UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TOMMY LEE BROWN,

                Plaintiff,

        v.

MARK L. BRADT, et al.,

                Defendants.
_____

**DECISION AND ORDER**

6:15-CV-06108 EAW

# **INTRODUCTION**

*Pro se* prisoner Tommy Lee Brown ("Plaintiff") asserts various constitutional claims under 42 U.S.C. § 1983 stemming from his confinement at the Five Points Correctional Facility ("Five Points"), Attica Correctional Facility ("Attica"), and Wende Correctional Facility ("Wende"). (Dkt. 32). Presently before the Court are a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants D. Gagnon ("Gagnon"), T. Wright ("Wright"), Tracy Jones ("T. Jones"), Kristin Salotti ("Salotti"), and L. Deming ("Deming") (Dkt. 80); a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) by W. Hughes ("Hughes"), Lisa Trapasso ("Trapasso"), Yolevich, O'Neil, and Loraine Jones ("L. Jones") (collectively the moving defendants will be referred to herein as "Defendants") (*id.*); and Plaintiff's motion for a separation and restraining order (Dkt. 72). For the following reasons, the Court grants in part and denies in part Defendants' motion to dismiss (Dkt. 80), denies Defendants' motion

for judgment on the pleadings (*id.*), and denies Plaintiff's motion for a separation and restraining order (Dkt. 72).

## BACKGROUND

### I. Factual Background

The following facts are taken from the allegations in Plaintiff's First Amended Complaint and Plaintiff's supplemental submissions. (Dkt. 18; Dkt. 18-1; Dkt. 32). The Court omits the allegations pertinent to Plaintiff's claims regarding Wende because the Wende claims are not relevant to the instant motion to dismiss. As is required at this stage of the proceedings, Plaintiff's allegations are treated as true.

#### A. Attica Allegations

On February 27, 2012,[1] Plaintiff, while incarcerated at Attica with a known history of mental health issues including suicidal tendencies, was stabbed several times in the recreation yard by another inmate, Geraldo Rodriguez, with a seven-inch shank. (Dkt. 32 at ¶¶ 88-89). Plaintiff sustained lacerations in the hands and arms as he attempted to defend himself. (*Id.* at ¶ 89). Several prison officials, including defendants Bradt, Hughes, Lowe, Mitchell and a number of unidentified John Doe Correction Officers, "participated [in] and/or were aware of the Plaintiff being assaulted and, with deliberate indifference, failed to provide proper aid and assistance to the Plaintiff." (Dkt. 32 at ¶ 90; *see* Dkt. 1 at 15). Plaintiff further alleges that, following Rodriguez's attack, several correction officers

---

[1] Although the First Amended Complaint prepared by counsel alleges that part of these events took place on June 27, 2012 (Dkt. 32 at ¶ 88), it is clear from Plaintiff's initial complaint that the alleged attack by Rodriguez and the events that followed occurred in February 2012 (Dkt. 1 at 16-19).

assaulted him with batons and failed to provide medical attention until one hour after the attack. (*Id.*). Defendants' response to the Court's request pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), identified the potential officers who allegedly engaged in this assault as Weston, Bucchett, Kazmierczak, and Wright. (Dkt. 41).

Plaintiff was seen at the Attica infirmary by Defendants Michalek and Rao, as well as other John or Jane Doe employees. (Dkt. 33 at ¶ 102). Plaintiff alleges that the medical staff's "indifference to [his] condition" caused him to "sustain more pain and suffering" and that "[he] now has nerve damage in his hands." (*Id.* ¶¶ 102-03). After being seen at the Attica infirmary, Plaintiff "needed to be transported to the hospital for further treatment." (*Id.* at ¶ 101).

After being assaulted, Plaintiff was falsely charged with "violating codes of conduct including fighting and causing a disruption" (Dkt. 32 at ¶ 105), and was subsequently found guilty and sentenced to one year in the special housing unit ("SHU") by Defendant Robinson. (*See* Dkt. 18 at 9). Plaintiff successfully appealed his disciplinary determination, and his charges were dismissed after he served his full one-year SHU sentence. (Dkt. 32 at ¶ 107).

**B. Five Points Allegations**

On June 19, 2013, Plaintiff was confined in a strip cell at Five Points when a correction officer demanded that Plaintiff end his hunger strike or the food "will be shoved into [him]." (*Id.* at ¶¶ 123-24). Defendants Ranger, Bailor, Novak, Burns, Schmitt, Relf, Carey, and Jones, as well as the individuals identified in the *Valentin* response as Paradowski, Gagnon, Gionowski, Avery, and Drayse, then pushed Plaintiff to the ground

and assaulted him with batons and other objects, causing injuries to his shoulder. (*Id.* at ¶ 125; *see* Dkt. 18-1; Dkt. 41). Plaintiff further alleges that defendants Mott and Dadson, healthcare officials at the prison, failed to provide adequate treatment. Plaintiff was later charged with assaulting the aforementioned correction officers. (Dkt. 32 at ¶ 126).

## II. Procedural Background

On March 2, 2015, Plaintiff filed the initial complaint in the instant matter, which alleged the incidents at Attica and Five Points. (Dkt. 1). Upon screening by the Court on June 27, 2016, Plaintiff was granted leave to proceed *in forma pauperis*, as well as leave to file an amended complaint to re-allege any claims dismissed by the Court in its screening order. (Dkt. 15). Also on June 27, 2016, Plaintiff submitted a supplemental pleading concerning the incidents at Wende. (Dkt. 16). On July 14, 2016, Plaintiff moved to amend the complaint and submitted two additional, separate pleadings concerning incidents at Attica (Dkt. 18) and Five Points (Dkt. 18-1). He also filed several motions seeking the appointment of counsel. (Dkt. 14; Dkt. 19; Dkt. 21). On February 22, 2017, the Court granted Plaintiff's motion to appoint counsel and assigned a *pro bono* attorney for the limited purposed of drafting the Amended Complaint. (Dkt. 23; Dkt. 24). The Amended Complaint was filed on July 11, 2017.[2] (Dkt. 32).

---

[2] Pursuant to the Court's February 22, 2017, Order, Plaintiff's appointed counsel ceased to be his counsel upon the filing of the Amended Complaint on July 11, 2017. (Dkt. 23 ("[U]pon the filing by *pro bono* counsel of an amended complaint, *pro bono* counsel's representation of Plaintiff in this matter will terminate, and *pro bono* counsel will have no further obligations or responsibilities to Plaintiff or to the Court in this matter.")).

The Court evaluated the Amended Complaint pursuant to the 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) criteria and found that some of Plaintiff's claims were sufficient to survive initial review and proceed to service. (Dkt. 40). The Court directed service of the Amended Complaint, along with the previously filed supplemental pleadings, and requested that the Attorney General of the State of New York ("Attorney General") ascertain, if possible, the full names of the John and Jane Doe defendants named in this action pursuant to *Valentin*. (Dkt. 40 at 10-11).

On October 4, 2018, the Attorney General filed a *Valentin* response wherein potential John and Jane Does were named. Plaintiff was instructed to file any objections to the potential names of the John and Jane Does by March 1, 2019. (Dkt. 44). Plaintiff's response, dated February 27, 2019, was filed on March 11, 2019. (Dkt. 50).

Plaintiff had no objection to substituting in the potential defendants listed in the *Valentin* response. (*See id.* at 2 ("At this time, I am not striking no [sic] Defendants[.]")). With respect to Gagnon, Plaintiff stated: "I honestly do not recall writing in any of my grievances nor do I recall seeing in my Civil Complaint any of these officers. So I am very, very disturbed and confused by this, and I wish to have this matter looked into and corrected, if need be." (*Id.* at 3). Plaintiff also noted about Wright: "I honestly am not sure about [this name]. I know I never wrote such name[] in my grievances nor in my Civil Complaint. So I am not sure if [he was] a part of assaulting me and in violating my rights." (Dkt. 50 at 4). Plaintiff's Amended Complaint was deemed amended to reflect the full names of the John and Jane Does as listed in the *Valentin* response. (Dkt. 62).

O'Neil filed an answer to the Amended Complaint on April 4, 2019 (Dkt. 59), Yolevich filed an answer on April 24, 2019 (Dkt. 64), Hughes filed his on May 1, 2019 (Dkt. 65), and L. Jones and Trapasso filed their answer on May 6, 2019 (Dkt. 66). On May 23, 2019, Plaintiff filed his motion for a separation and restraining order. (Dkt. 72).

Defendants filed the motion to dismiss and motion for judgment on the pleadings on July 2, 2019. (Dkt. 80). After receiving several extension of time within which to file a response, Plaintiff filed his opposition to the motions on November 8, 2019 (Dkt. 98), and Defendants filed their reply on November 26, 2019 (Dkt. 100).

## DISCUSSION

### I. Defendants' Motions

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) and a motion for judgment on the pleadings pursuant to Rule 12(c). The Court addresses both motions together.

#### A. Legal Standard

#### 1. Motion to Dismiss

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### 2. Motion for Judgment on the Pleadings

"Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016) (quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015)).

### B. Five Points Defendants

As a preliminary matter, L. Jones, the Deputy Superintendent of Five Points, was dismissed with prejudice by the Court's August 29, 2018, Screening Order (Dkt. 40 at 9, 11), and the Court has previously instructed her termination from the caption of this lawsuit (Dkt. 44 at 2 n.2). Accordingly, Defendants' motion is denied as moot as to L. Jones, and the Clerk of Court is instructed to terminate "Deputy Supt. Loraine Jones" from the caption.

Defendants argue that because the Amended Complaint was prepared by counsel, Plaintiff is not entitled to the special solicitude normally afforded *pro se* plaintiffs. "It is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quotations and citation omitted). Courts apply this doctrine on a document-by-document basis. *See Pflaum v. Town of Stuyvesant*, 937 F. Supp. 2d 289, 295 n.1 (N.D.N.Y. 2013) (affording special solicitude to complaint drafted by *pro se* plaintiff, but not to opposition to memorandum of law drafted by counsel). Accordingly, even if the Amended Complaint is not entitled to special solicitude, the documents submitted by Plaintiff—such as his responses to the motion to dismiss (Dkt. 98) and to the Court's Order regarding the *Valentin* response (Dkt. 50)—require a liberal construction.

Defendant argues that Gagnon should be dismissed because he "is now a defendant only because of his having been named in the *Valentin* response," and notes that Gagnon's "name does not appear in any pleadings whatsoever." (Dkt. 80-1 at 8). The Amended Complaint alleges that Plaintiff was assaulted on June 19, 2013, by several named

defendants and John Does "currently unknown to the Plaintiff despite his attempts to determine the names of these Defendants." (Dkt. 32 at ¶¶ 124-25). Plaintiff's initial filing that describes the alleged events of June 19, 2013, named 10 defendants involved in Plaintiff's alleged assault, none of which are Gagnon. (Dkt. 18-1 at 4). The *Valentin* response listed Gagnon as a potential John Doe involved with the alleged attack on Plaintiff at Five Points because he is listed on a log sheet as one of the officers that monitored Plaintiff during a self-harm watch on June 19, 2013. (Dkt. 41; Dkt. 41-1 at 3). Additionally, although Plaintiff noted that he did "not recall writing in any of my grievances" or "seeing in my Civil Complaint" anything about Gagnon, he also stated he was "not striking [any] defendants." (Dkt. 50 at 2-3).

The Court finds it would not be appropriate to dismiss Gagnon at this time. Plaintiff did not state that Gagnon was not involved in the alleged June 19, 2013, incident; only that he does not recall including Gagnon in a grievance or in his Civil Complaint, which is consistent with naming a John Doe defendant in a pleading. *Carter v. Baney*, No. 9:08-CV-947 NAM/GJD, 2009 WL 3046385, at *2 (N.D.N.Y. Sept. 16, 2009) ("As for those individuals whose names he does not know, for pleading purposes plaintiff can sue them as 'John Doe[.]'"). And although Plaintiff did not include John Doe defendants in his initial submission regarding the alleged incident at Five Points, that submission is not the operative pleading in this matter. The operative pleading—the Amended Complaint—does list John Doe defendants as being involved with the alleged June 19, 2013, incident. (Dkt. 32 at ¶¶ 124-25); *see Sanchez v. Nassau County*, No. CV177335JFBAKT, 2019 WL 2438652, at *7 (E.D.N.Y. Feb. 28, 2019) ("[T]he Court finds Plaintiff's allegations in his

Amended Complaint to be controlling where, as here, there exists a factual discrepancy[.]"), *report and recommendation adopted*, No. 17CV7335JFBAKT, 2019 WL 1253283 (E.D.N.Y. Mar. 18, 2019). The Court also notes that the Attorney General's Office provided Gagnon's name in the *Valentin* response. If some of the names provided in the *Valentin* response were provided in error, and Gagnon was not personally involved in the alleged Five Points incident, *see Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)), that issue is more properly addressed during summary judgment, *see Green v. Harris*, 309 F. Supp. 3d 10, 13 (W.D.N.Y. 2018) (granting motion for summary judgment in lieu of answer where there was no dispute that defendant was not involved). At this stage of proceedings, where the Court must draw all reasonable inferences in Plaintiff's favor, *see Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 767 (2d Cir. 2009) (discussing that when reviewing a motion to dismiss pursuant to 12(b)(6) or motion for judgment on the pleadings pursuant to 12(c), courts must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor"), and especially in light of Plaintiff's representation about not "striking" any defendants at this time, Defendants' motion to dismiss is denied as to Gagnon.

Defendants also contend that the claims against O'Neil should be dismissed because there are no allegations of his personal involvement. In the Second Circuit, it is well settled that "personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977).

Plaintiff's initial filing regarding the Five Points incident and the Amended Complaint do not specify how O'Neil was involved in the alleged events. Instead, Plaintiff alleges for the first time in his response to the instant motion to dismiss that O'Neil "prevented the filing of [P]laintiff's grievance," and "did not lodge [P]laintiff's grievances." (Dkt. 98 at 8). In other words, Plaintiff does not purport to assert an excessive use of force claim against O'Neil as the Amended Complaint suggests, but an entirely separate First Amendment denial of access to courts claim. "Plaintiff cannot amend his Complaint to add additional causes of actions in his opposition papers." *Santana v. City of New York*, No. 15 CIV. 6715 (ER), 2018 WL 1633563, at *4 (S.D.N.Y. Mar. 29, 2018) (collecting cases); *see Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (dismissing claim asserted in *pro se* plaintiff's opposition to motion to dismiss that was not encompassed in plaintiff's amended complaint). Even if Plaintiff had properly alleged a denial of access to courts claim against O'Neil, dismissal would still be appropriate. "[I]nterference with an inmate's attempt to file a grievance will not give rise to a constitutional claim, absent a showing that the defendants' actions in that regard resulted in actual prejudice to the inmate's pursuit of a legal action," *Abney v. Jopp*, 655 F. Supp. 2d 231, 234 (W.D.N.Y. 2009), and Plaintiff acknowledges that he was able to "file his grievance in another facility" (Dkt. 98 at 8). Accordingly, the Court finds that dismissal of the claims against O'Neil is appropriate and grants Defendants' motion as to O'Neil.

Defendants also contend that Plaintiff fails to state a claim against T. Jones, Salotti, and Deming because he had not previously implicated them in his deliberate indifference to a serious medical need claim. (Dkt. 80-1 at 9-11). Unlike the above situation with O'Neil, the Amended Complaint does include a claim for failure to provide medical treatment regarding the alleged June 19, 2013, incident at Five Points. (Dkt. 32 at ¶ 177).[3] After receiving the *Valentin* response that suggested T. Jones, Salotti, and Deming as potential Jane Doe defendants (Dkt. 41), Plaintiff indicated that those were the correct names to substitute into his Amended Complaint (Dkt. 50 at 3). Plaintiff asserts in his response to the motion to dismiss that T. Jones, Deming, and Salotti attended to his injuries after the alleged incident on June 19, 2013, and that "they grossly ignored him and failed to correctly document his injuries." (Dkt. 98 at 8).

Courts in this Circuit have held:

> [T]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations in the plaintiff's complaint.

*Cusamano v. Sobek*, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009); *see Gadson v. Goord*, No. 96 CIV. 7544 (SS), 1997 WL 714878, at *1 (S.D.N.Y. Nov. 17, 1997) ("[T]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."). Plaintiff has asserted a

---

[3]  The claim states: "Defendant officers John Does and supervising officers owed a duty of care to Mr. Brown to provide him with access to medical treatment after he had been assaulted" (Dkt. 32 at ¶ 177), but also that it was asserted against "All Named Five Points Defendants," which included Jane Does (*id.* at 2, 29).

- 12 -

deliberate indifference to medical needs claim against the Five Points defendants, and the allegations against T. Jones, Salotti, and Deming in Plaintiff's opposition are consistent with the deliberate indifference allegations in the Amended Complaint when given the special solicitude Plaintiff is entitled to as a *pro se* litigant.

However, the Court still finds that the deliberate indifference claims against T. Jones, Salotti, and Deming should be dismissed. An Eighth Amendment claim arising out of inadequate medical care requires a plaintiff-inmate to demonstrate that a defendant was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A claim for deliberate indifference has both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Objectively, a medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). "Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Lapierre v. County of Nassau*, 459 F. App'x 28, 29 (2d Cir. 2012) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Specifically, a plaintiff must prove that the prison official knew of a serious medical condition and nonetheless disregarded the plaintiff's medical needs. *Farmer*, 511 U.S. at 837 (holding that a prison official does not act in a deliberately indifferent manner towards an inmate unless he "knows of and disregards an excessive risk to inmate health or safety").

Plaintiff alleges that T. Jones, Salotti, and Deming "grossly ignored" Plaintiff after his alleged assault by officers. (Dkt. 98 at 8). The Court finds that such allegations are too vague and conclusory to withstand a motion to dismiss. *See Whitfield v. O'Connell*, 402 F. App'x 563, 566 (2d Cir. 2010) (affirming dismissal of deliberate indifference claim where "no non-conclusory allegations suggest that [the defendant] acted with a sufficiently culpable state of mind"); *Melvin v. County of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *10 (S.D.N.Y. Mar. 29, 2016) (collecting cases). Additionally, Plaintiff's allegations that T. Jones, Salotti, and Deming failed to correctly document his injuries (Dkt. 98 at 8) and negligently failed to provide him with medical treatment (Dkt. 32 at ¶¶ 176-77) fail to plausibly allege anything more than malpractice or negligence, which is not sufficient to state a constitutional claim for deliberate indifference to a serious medical need. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness[.]"); *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004) ("[M]ere allegations of medical malpractice or negligent failure to provide treatment will not suffice to support an action under 42 U.S.C. § 1983." (original alteration and quotation omitted)). Accordingly, the Court finds the deliberate indifference and medical negligence claims are insufficient as to T. Jones, Salotti, and Deming, and grants Defendants' motion as to those Defendants.

### C. Attica Defendants

Defendants argue Hughes should be dismissed from the instant matter because he is a supervisory defendant, and Plaintiff has failed to allege his personal involvement. A supervisory defendant's personal involvement may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

In the instant matter, the allegations in the Amended Complaint against Hughes are thin. Plaintiff alleges that Hughes as the superintendent of Attica would know the names of the John Doe officers who allegedly attacked him on February 27, 2012. (Dkt. 32 at ¶ 94). Plaintiff also alleges that Hughes "owed a duty of care to the Plaintiff to prevent the conduct alleged." (*Id.* at ¶ 141). The supplemental complaint submitted by Plaintiff before the Amended Complaint was filed also contained no allegations regarding Hughes. (Dkt. 18). However, the original complaint filed by Plaintiff included allegations that Hughes was present "in the immediate area" of A Block where Plaintiff was allegedly beaten (Dkt. 1 at 15), and the Court did not dismiss the claims against Hughes in its initial screening of the original complaint (Dkt. 15 at 9). Plaintiff discusses the allegations from the original complaint in his opposition to the motion to dismiss (Dkt. 98 at 6), and those allegations are consistent with the allegations and claims already in the Amended Complaint, *see*

*Cusamano*, 604 F. Supp. 2d at 461. Additionally, when the Court screened Plaintiff's Amended Complaint, the Court incorporated its findings from the initial screening of Plaintiff's original complaint into the second Screening Order—the Court allowed the allegations against Hughes to go forward despite the sparse allegations against Hughes in the Amended Complaint, referencing Plaintiff's allegations from the original complaint. (*See* Dkt. 40 at 7 (allowing claim against Hughes to proceed after finding Plaintiff "accused" Hughes of assaulting him "immediately after he was stabbed by a fellow inmate")). Accordingly, the Court finds that Plaintiff has sufficiently alleged Hughes's personal involvement and denies Defendants' motion to dismiss as to Hughes.[4]

Defendants also contend that Trapasso and Yolevich should be dismissed from the instant action because no specific claims were alleged against either of them in the Amended Complaint. However, similar to Hughes, the Court allowed the claims alleged in Plaintiff's initial complaint against Trapasso and Yolevich to go forward in its initial screening order (Dkt. 15 at 9-10), and incorporated those findings into its screening of the Amended Complaint (*see* Dkt. 40 at 8 (allowing deliberate indifference to medical condition claims to proceed against Yolevich and Trapasso, and noting they "are accused of refusing to adequately document or treat Plaintiff's medical and mental health

---

[4] Defendants argue that Artus and Fischer were also supervisory defendants and have both been terminated, and so Hughes should be too. (Dkt. 80-1). However, unlike Hughes, there were no allegations regarding the personal involvement of Artus or Fischer in any of Plaintiff's submissions. Additionally, Bradt, who was also sued in his supervisory capacity, has not yet been terminated because much like Hughes, Plaintiff alleged that during the incident on February 27, 2012, Bradt "stood there watching and did not stop the assault." (Dkt. 18 at 7).

conditions")). As a result, the Court finds Plaintiff has made specific allegations as to Trapasso and Yolevich and denies Defendants' motion as to those Defendants.

Defendants also make an argument for dismissing Wright similar to what they argued for dismissing Gagnon: Defendants argue that Wright's name does not appear anywhere in the pleadings and that he was only substituted in as a defendant because his name was provided in the *Valentin* response. (Dkt. 80-1 at 12-13). They further argue that even though John Does were listed in the Amended Complaint with regards to the alleged incident at Attica on February 27, 2012, Plaintiff did not list John Does in his July 14, 2016, supplemental submission about the alleged Attica incident—which was filed before the Amended Complaint—and as a result, the Court should find that Wright was improperly substituted as a defendant. (*Id.* at 13).

Similarly to Gagnon, the Court finds it would not be appropriate to dismiss Wright at this time. Plaintiff has not stated that he does not think Wright was involved in the alleged Attica incident, only that he is "not sure about" Wright's name, and that he is "not sure" if Wright was "a part of assaulting me." (Dkt. 50 at 4). Plaintiff's representation is consistent with naming a John Doe defendant in a pleading. *See Carter*, 2009 WL 3046385, at *2. Additionally, Plaintiff's supplemental submission regarding Attica is not the operative pleading in this matter, the Amended Complaint is. Like with Gagnon, the Amended Complaint lists John Doe defendants as being involved with the alleged February 27, 2012, incident. (*See* Dkt. 32 at ¶¶ 99, 102). The Court once again notes that the Attorney General's Office provided Wright's name in the *Valentin* response, and evaluating the propriety of the *Valentin* response's contents is more properly addressed

during summary judgment. *See Green*, 309 F. Supp. 3d at 13. At this stage of proceedings where the Court must draw all reasonable inferences in Plaintiff's favor, and especially in light of Plaintiff's representation about not "striking" any defendants at this time, Plaintiff's claims against Wright will be allowed to proceed.

## II. Plaintiff's Motion for a Separation and Restraining Order

Plaintiff requests a separation and restraining order preventing him from being housed at either Attica, Five Points, or Wende. (Dkt. 72). Plaintiff alleges that he was "intentionally" transferred to Five Points, and that upon his transfer there, the staff at Five Points has retaliated against him by delaying his receipt of mail, keeping his mail from being sent to the Court, and destroying his legal documents. (*Id.*). Plaintiff is no longer housed at Five Points and has instead been transferred to the Sullivan Correctional Facility. (*See* Dkt. 97).

"In the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction." *Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997). In order to obtain a preliminary injunction, the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As an initial matter, Plaintiff's submission does not contain any representations regarding Wende or Attica. Accordingly, the Court finds Plaintiff has failed to establish any of the elements necessary to obtain preliminary injunctive relief as to those facilities.

Additionally, even if Plaintiff's statements regarding his past treatment at Five Points are true, the Court finds Plaintiff has failed to establish irreparable harm regarding any future housing at Five Points. "It is well settled that a prisoner has no constitutional right to serve a sentence in any particular institution or to be transferred or not transferred from one facility to another." *Fox v. Lee*, No. 915CV390TJMCFH, 2018 WL 5729289, at *3 (N.D.N.Y. Nov. 2, 2018) (quoting *Fisher v. Goord*, 981 F. Supp. 140, 176 (W.D.N.Y. 1997)), *appeal dismissed*, No. 18-3544 (2d Cir. Mar. 5, 2019). While "prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights," *Amaker v. Fischer*, No. 10-CV-0977A SR, 2014 WL 8663246, at *8 (W.D.N.Y. Aug. 27, 2014) (citing *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998)), *report and recommendation adopted*, No. 10-CV-0977, 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015), a plaintiff seeking relief from potential future harm must show more than a mere possibility of irreparable harm, *see Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Plaintiff has failed to present facts demonstrating that he will be transferred back to Five Points in the future, or that even if he is, that he would face retaliatory conduct. *See, e.g.*, *Agostini v. Backus*, No. 14-CV-6188 CJS, 2015 WL 1579324, at *3 (W.D.N.Y. Apr. 9, 2015) ("Plaintiff's request for injunctive relief must be denied, since Plaintiff's concern about future retaliation, even if sincere, is speculative, and therefore is not sufficient to establish irreparable harm." (collecting cases)); *Ward v. LeClaire*, No. 9:07-CV-0026, 2007 WL 1532067, *2

(N.D.N.Y. May 24, 2007) ("Plaintiff's request for injunctive relief against future threats or harassment by inmates and/or prison officials is too speculative to meet the irreparable harm requirement. Although Plaintiff claims that he will face future threats and harassment, Plaintiff cannot claim with any certainty how, when, or where he will be retaliated against, or that the retaliation will result in irreparable harm to Plaintiff." (citation and footnote omitted)). Accordingly, Plaintiff's motion for a separation and restraining order (Dkt. 72) is denied.

## **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss (Dkt. 80), denies Defendants' motion for judgment on the pleadings (*id.*), and denies Plaintiff's motion for a separation and restraining order (Dkt. 72). Defendants' motion for judgment on the pleadings is denied as moot as to L. Jones; and is denied on the merits as to Hughes, Trapasso, Yolevich, and O'Neil. Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted as to T. Jones, Salotti, and Deming; and is denied as to Gagnon and Wright. The Clerk of Court is instructed to terminate "Deputy Supt. Loraine Jones," "Tracy Jones," "Kristin Salotti," and "L. Deming" from the caption, and to enter judgment in favor of T. Jones, Salotti, and Deming.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 20, 2020
      Rochester, New York